GRICE v. AMERICAN RY. EXPRESS CO.
et al. (No. 1378.)*

(Court of Civil Appeals of Texas. El Paso.
Jan. 4, 1923. Rehearing Denied
Feb. 8, 1923.)

1. **Appeal and error** &#8658;76(1)—**Judgment not providing process or means for collection is not final.**

If a judgment does not provide a process or means whereby the amount determined to be due may be collected, it is not final.

2. **Appeal and error** &#8658;76(1)—**Judgment against nonresident defendant to extent of property garnished is a "final judgment."**

Where jurisdiction over a nonresident defendant was obtained by garnishment proceedings, which are proceedings separate from the main action, a judgment in the main action against that defendant for the damages found, to the extent that they could be satisfied by the garnishment proceedings, was all that the court had jurisdiction to render, unless the judgment in the garnishment proceedings could be rendered simultaneously, which would not generally be possible, and therefor is a final judgment from which an appeal may be taken.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

3. **Judgment** &#8658;17(11)—**Personal judgment cannot be rendered against nonresident whose property was garnished.**

The law does not provide for a personal judgment against a nonresident defendant whose property was garnished.

4. **Corporations** &#8658;590(3)—**Consolidated express company held liable for debts of constituent companies.**

The American Railway Express Company, which was formed to take over the property of previously existing express companies, under an agreement made during the federal control of the railroads and subsequently approved by the Interstate Commerce Commission, and which acquired all the property of the express companies used in transportation and carried on the business thereafter, issuing its stock to the former companies in payment for their assets, was a consolidated corporation which was liable for the debts of the constituent corporations, whether arising from contract, or in tort, even though the constituent companies maintained their corporate existence.

5. **Corporations** &#8658;591—**Evidence held to show agreement by consolidated company to assume debts of constituents.**

Evidence that the officers of the various express companies, which were consolidated in the American Railway Express Company, had stated the consolidated company would assume the debts of the existing companies, and that, after consolidation, the claim agents of the new corporation had settled numerous claims against the former corporations, drawing vouchers therefor on the new corporation which had honored them, shows an agreement, either expressed or implied, on the part of the new corporation to assume the debts of the former companies.

On Motion for Rehearing.

6. **Appeal and error** &#8658;1177(7)—**Case need not be remanded, where appellee cannot disprove fact showing liability.**

Where a judgment in favor of a consolidated express company was reversed, on the ground that it had assumed the debts of the constituent companies, one of whom was liable to plaintiff, the case need not be remanded, where there was no possibility the consolidation upon which liability was founded could be controverted.

7. **Appeal and error** &#8658;1177(1)—**Case not remanded to give jury trial, where appellee made no request for submission of issues found by court in its favor.**

Where the case was submitted to the jury on special issues, and a defendant made no request for the submission of an issue as to whether it had assumed the debt sued upon, it cannot, after trial judge's finding on that issue in its favor was reversed, ask a remand to have that issue submitted to the jury, which would permit it to speculate upon the result with a view to obtaining a new trial if it was not satisfactory.

Higgins, J., dissenting in part.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Lloyd Grice, by his next friend, against the American Railway Express Company and another. Judgment for the named defendant, and for plaintiff against the other defendant, and plaintiff appeals. Reversed, and judgment rendered against the named defendant.

Wallace & Cameron, A. J. Harper and Lea, McGrady, Thomason & Edwards, all of El Paso, for appellant.

Turney, Burges, Culwell, Holliday & Pollard, of El Paso, for appellees.

HARPER, C. J. This cause of action was instituted by Lloyd Grice, a minor, by next friend, against Wells Fargo & Co., and the American Railway Express Company for damages for personal injuries. As to Wells Fargo & Co., for cause of action alleged that he was a resident of and employed by the latter company, at Douglas, Ariz., and while employed and engaged in his duties incident to his employment, through the negligence of his foreman he was seriously and permanently injured, on, to wit, the 10th day of June, 1918.

As to the American Railway Express Company, he alleged that on or about June 21, 1918, by agreement between themselves and with William G. McAdoo, Director General of Railroads of the United States, Wells Fargo & Co. and other express companies formed a new corporation, to wit, the Amer-

ican Railway Express Company, by consolidating all express companies into the latter named corporation and transferred thereto all the property, franchises and choses in action both tangible and intangible, of each and all of the express companies used in their transportation business, which said property including certain amounts of money should constitute the capital stock of defendant American Railway Express Company and in payment therefor each express company received stock for the value of property so transferred.

That, on July 1, 1918, after incorporation, the American Railway Express Company took over all of said properties, and thereafter made application to the Interstate Commerce Commission in pursuance of section 407 of the Transportation Act of 1920 (41 Stat. 482), for permission to consolidate all express companies which had theretofore been taken over by it, which was granted December 7, 1920.

"Plaintiff further alleged that, at the time of the consolidation, by virtue of the McAdoo contract, as well as at the time of the legal consolidation by order of the Interstate Commerce Commission, it was agreed and understood that the American Railway Express Company, in consideration of the transfer to it of all properties of the Wells Fargo & Co., would pay all the debts and liabilities, both liquidated and unliquidated, of the Wells Fargo & Co. existing of date July 1, 1918, and that by virtue of said consolidation and the transfer by Wells Fargo & Co. to the American Railway Express Company of all its assets pertaining to the express business in the United States, the said American Railway Express Company became liable and bound to pay all the debts, both liquidated and unliquidated, of the Wells Fargo & Co. existing prior to July 1, 1918, and by virtue of said consolidation, both under the McAdoo agreement and by virtue of the Interstate Commerce Commission, as well as by virtue of the agreement, either express or implied, on the part of the American Railway Express Company, to pay the debts of the Wells Fargo & Co., said American Railway Express Company became bound to pay plaintiff's claim and cause of action."

The American Railway Express Company answered by general demurrer, general denial, and specially pleaded assumed risk and contributory negligence upon the part of plaintiff.

"The case came on to be heard before a jury, on January 18, 1922, and the court submitted the case to the jury on special issues, and the jury, on the same day returned into open court its answers to said special issues, finding all issues in favor of the plaintiff. Plaintiff thereupon filed his motion for judgment on the findings of the jury, and asked the court to render a judgment in his favor against the American Railway Express Company, for the sum of $50,000. The court, after due consideration of said motion, rendered his judgment denying to plaintiff a judgment against the American Railway Express Company, but rendered a judgment against the plaintiff and in favor of the defendant American Railway Express Company, and also rendered a judgment in favor of the plaintiff against Wells Fargo & Co. that plaintiff recover a judgment against Wells Fargo & Co. to the extent only of the amount it may be shown that the American Railway Express Company is indebted to Wells Fargo & Co. as garnishee; to which action of the court in refusing to render judgment against the American Railway Express Company, plaintiff excepted, and gave notice of appeal."

The appellee American Railway Express Company has filed its motion to dismiss the appeal for want of jurisdiction, because it says there is no final judgment.

The judgment is as follows. It recites:

"Cause came on to be heard January 16, 1922. Plaintiff and defendant, American Railway Express Company, appeared and answered ready for trial and Wells Fargo & Co. failed to appear or answer, although duly cited by publication * * * and by service of notice to nonresident upon it; and the court on a former day of this term having appointed * * * attorney of this court to represent the defendant Wells Fargo & Co., a nonresident of Texas, cited as above set out, said attorneys appeared * * * and filed their answer on behalf of said defendant."

Then it recites a jury was impaneled and sworn, and, after hearing all the evidence, the case was submitted upon special issues. Then follows copy of the verdict, and then:

"And whereas, on the 26th day of January, 1922, plaintiff filed his motion for judgment, asking a judgment against the American Railway Express Company on the findings of the jury, and in the event said motion is denied by the court, asking judgment against Wells Fargo & Co.; and whereas, on the 15th day of February, 1922, came on to be heard plaintiff's motion for judgment, and the court, after duly considering same, refused to grant plaintiff's motion for judgment against the American Railway Express Company, but then and there rendered judgment against the plaintiff and in favor of the American Railway Express Company, and granted a judgment as prayed for in plaintiff's motion for judgment as against Wells Fargo & Co.:

"It is therefore the order, judgment, and decree of the court that plaintiff, Lloyd Grice, take nothing as against the defendant American Railway Express Company, and that defendant American Railway Express Company go hence without day, and recover of and from the defendant all costs by it in this behalf expended, for which said American Railway Express Company shall have its execution, to which action of the court and judgment plaintiff then and there in open court excepted, and gave notice of appeal to the Court of Civil Appeals in and for the Eighth Supreme Judicial District sitting at El Paso, Tex.

"It is therefore the order of the court that the plaintiff, Lloyd Grice, do have and recover of and from the defendant Wells Fargo & Co., a corporation, the sum of $50,000, with interest thereon from the 18th day of January, 1922,

at 6 per cent. per annum together with all costs in this suit, including fee of $300, now allowed to said Brooke and Neill for representing the nonresident defendant, and ordered taxed as costs.

"It further appeared to the court that, since the filing of the original suit herein, the plaintiff sued out an original attachment against the defendant Wells Fargo & Co. or its property, which said attachment writ was duly returned by the sheriff of El Paso County, 'no property belonging to the defendant Wells Fargo & Co. found in El Paso County' and afterwards, on the same day, plaintiff caused to be issued a writ of garnishment summoning the American Railway Express Company, a corporation, to answer as garnishee what, if anything, it was indebted to the defendant Wells Fargo & Co., etc., which writ was duly served upon said garnishee, in El Paso county, Tex., on the day of its issuance, and which said garnishment is numbered 21136 upon the docket of this court, styled Lloyd Grice, by Next Friend, v. American Railway Express Company, Garnishee, and said garnishee having answered that at the time said writ of garnishment was served on it and at all times since, the defendant Wells Fargo & Co. was and now is the owner of stock in this American Railway Express Company, of the par value exceeding $10,000,000, which said sum of $10,000,000 is in amount in excess of the judgment and costs in this suit.

"It is therefore adjudged and decreed by the court that the above recovery and judgment in favor of plaintiff against the defendant Wells Fargo & Co. is only effective against said Wells Fargo & Co. to the extent that the same may be satisfied out of the sale of the stock held by said garnishee above mentioned, as provided by law, and that no execution or order of sale issue on said judgment against said American Railway Express Company, save in so far as may be permitted or authorized by order of this court in said garnishment proceedings, this court not having as yet determined as to what extent it would render judgment against said garnishee and the manner of enforcing the same, and holding in abeyance plaintiff's motion filed in said cause contesting the garnishee's answer, and that no order of sale or execution shall issue in this case on this judgment against Wells Fargo & Co. until the issues shall have been tried and determined in the garnishment proceedings above set out, and the amount of indebtedness, if any, determined by trial of said cause as to the amount of stock, money, or other effects the garnishee may be shown to be indebted to the defendant Wells Fargo & Co."

The points are made that, no judgment having been rendered in favor of plaintiff below in the garnishment proceedings, and that, by the terms of the judgment, it is declared that it shall only be effective against said Wells Fargo & Co. to the extent that same may be satisfied out of the sale of the stock held by garnishee as provided by law, and that no execution or order of sale issue, etc., save as may be authorized in the garnishment proceedings, and the court not having yet determined to what extent it would render judgment against said garnishee and the manner of enforcing same, and

that no execution issue in this case on their judgment against Wells Fargo & Co. until the issues shall have been tried and determined in the garnishment proceedings, etc.; that none of the facts necessary to determine the liability of Wells Fargo & Co. have been adjudicated, and until they are no final judgment exists, and because it does not declare the sentence or judicial consequences of the facts determined and to be determined, etc.

[1] The judgment is final as to appellee American Railway Express Company. It finds the fact as to the Wells Fargo & Co., that plaintiff recover the sum of $50,000 with interest and attorney's fees, so if the judgment lacks finality it is only because it does not contain the decision or pronounce the sentence of the law upon the matter contained therein, for, if it does not provide a process or means whereby the amount determined to be due may be collected, it is not final.

[2] This decree declares that the above recovery and judgment in favor of plaintiff against the defendant is effective to the extent that the same may be satisfied out of the sale of the stock held by said garnishee as provided by law. If the decree had ended here, it would have contained in legal effect all necessary sentence, without the concluding sentences; for—

"the notice required by the statute * * * and the service of the writ of garnishment brought under the control of the court and in a sense within its custody the sum due from that corporation to the garnishees. While this did not confer on the court jurisdiction to render a judgment binding in personam against [Wells Fargo & Co], it did confer on the court jurisdiction to enter a judgment binding on that which had by process been * * * seized, and under the jurisdiction thus acquired a judgment was rendered * * * that went no further than the jurisdiction acquired authorized." Goodman v. Henly & Gabbert, 80 Tex. 499, 16 S. W. 432.

[3] If appellee is contending that a personal judgment should be rendered against Wells Fargo & Co., before the judgment in the instant case can be final, then no final judgment can ever be rendered because in this class of proceeding, as said above, the law does not provide for a personal judgment. The fact is, the court entered the judgment that it is authorized to render in this class of proceedings (Studebaker Harness Co. v. Gerlach Merc. Co. [Tex. Civ. App.] 192 S. W. 545), that is, to the extent of the property found in the garnishment proceedings to be in the hands of the garnishee. Therefore plaintiff having all the judgment authorized by law, it must of necessity be held to be final, from which an appeal will lie. Burrow—Jones—Dyer Shoe Co. v. Ger. Merc. Co. (Tex. Civ. App.) 200 S. W. 250.

There being no further question as to the proceedings as to Wells Fargo & Co., and

this appeal being from the judgment in favor of the American Railway Express Company, hereinafter called appellee, we now address ourselves to the propositions presented by briefs.

There seems to be no disputed issue of fact in the record, the only dispute being as to the legal effect thereof, it, therefore, becomes necessary to state so much of the facts as show the circumstances under which appellee acquired the properties and express business of the Wells Fargo & Co.

As alleged, appellant was injured June 10, 1918, at Douglas, in the state of Arizona. On June 21, 1918, acting under the laws of the United States, the Adams Express Company, the American Express Company, the Southern Express Company and Wells Fargo & Co. entered into a contract in writing with William G. McAdoo, Director General of Railroads of the United States, to form a corporation for the purpose of carrying on the express business of the United States, under federal control during the period of the war with Germany. Pursuant to this agreement, the American Railway Express Company was incorporated under the laws of the state of Delaware. The contract above noted provided:

"The express companies shall sell, convey, set over, and transfer to said new corporation all property owned and used by them respectively in carrying on their express transportation business in the United States, including supplies and materials on hand estimated total value of $30,000,000, etc."

Next it provides:

"Within the limit herein fixed, the stock issued by said new corporation shall be sufficient to pay at par for the properties so transferred to it, and provide the cash necessary for working capital."

This contract contained the following proviso:

"Provided, however, that the said property to be turned over to the said new corporation * * * does not include the office building of the American Express Company * * * or the office building of Wells Fargo & Co. on 6th street at Portland, Ore."

The provisions of this contract were carried out, and thereafter the Director General entered into a contract with appellee to take effect July 1, 1918, whereby the latter, for the compensation named, agreed to carry on the express transportation business of the United States while under federal control, pursuant to act of Congress.

After the expiration of the period of federal control an application was made March 11, 1920, to the Interstate Commerce Commission for permission to consolidate the said four express companies into the American Railway Express Company, a Delaware Corporation, "as provided for in paragraph 7 of section 5, as amended by section 407 of the Transportation Act 1920; which was granted and consolidation approved by the Interstate Commerce Commission December 7, 1920, after a hearing because of protests from several states.

The minutes of this hearing show that one reason assigned for the protest was that the debts of the several companies which accrued prior to the consolidation and taking over by the government had not been promptly paid, if at all, and it was urged that the appellant be required by the order of consolidation to assume the payment of all such as might be just, etc. This was refused by the Commission. In this respect the minutes contain a copy of the following circular.

"Commonwealth of Virginia.

"Department of the State Corporation Commission.

"Adams Express Company,
"American Express Company,
"Southern Express Company,
"Wells Fargo & Company Express.
"New York, June 11, 1918.

"To Officers, Agents and Employers:

"Settlement of Claims.

"We are beginning to find evidence of anxiety among patrons who have claims outstanding against our respective companies, the impression seeming to prevail that unless the claims are paid before July 1st, there would be difficulty in collecting them.

"We want to say to you that there is no need for any anxiety on the part of any patron or shipper, as an agreement has been entered into between our respective companies whereby the handling of these claims will be undertaken by the new company. No suits are necessary, as the new company will undertake to dispose of all of these matters with promptness and without unnecessary trouble or annoyance to our patrons.

"It is hoped through this notice that persons having claims against our several companies will more fully understand the conditions that obtain, and be willing to allow their claims to take the same course as has been followed in the past. The new company will be as anxious as the public to have all old claims disposed of and out of the way, and every energy will be put forth in that direction.

"W. M. Barrett,
"President Adams Express Company.
"G. C. Taylor,
"President American Express Company.
"T. W. Leary,
"President Southern Express Comany.
"B. D. Caldwell,
"President Wells Fargo & Company Express."

J. M. Wellborn testified, in substance:

"I am claim agent of the American Railway Express Company and held the position since 1919. I was employed off and on for years by Wells Fargo & Co. and regularly from September, 1916, until the consolidation, July 1, 1918, when I went with the American Railway Express Company. My territory as claim agent * * * I believe takes in every office

in Arizona and almost all of them in New Mexico and a few offices in Texas. After the consolidation I have settled claims on account of Wells Fargo & Co. in different jurisdictions. In settling them used a draft form of voucher; the same we used in settling all claims. There is a place on the draft on which we indorsed for which company or account it was issued. That is an American Railway Express Company draft, drawn on the American Railway Express Company and paid by it. The claims I settled were for loss and damage for freight. All these claims arose before the consolidation. They would have to be Fargo claims. Anything afterwards would have to be American Railway Express Company."

L. P. Bergman testified:

"I am superintendent of the American Railway Express Company in Arizona and New Mexico division, and part of Texas; appointed July 1, 1919; prior to that time I was superintendent for same company in and for the state of Montana. Prior to that time I was assistant superintendent for Wells Fargo & Co. in Alaska and Yukon division. I know that the American Railway Express Company took over some property of Wells Fargo & Co. I don't know the value. It took over 40 or 50 cars worth, $1,000 to $1,500 each, that would be $30,000 or $40,000, cars alone. Wells Fargo & Co. is not still a going concern as a transportation company that I know of."

[4] It seems to us that these evidentiary facts conclusively establish that the four corporations enumerated were consolidated by mutual agreement and a new corporation organized, all of their property used theretofore in their going concerns transferred to the new corporation organized for the purpose of receiving same and for the further purpose of carrying on all express business theretofore done by each and all of the agreeing companies in the name of the new corporation; that there was in no sense a sale of these properties, but an exchange thereof for stock in the new corporation; all this for the purpose of federal control for war purposes; and that, after the expiration of the period of federal control, the same companies, after being duly authorized as provided by law, reaffirmed by mutual agreement the consolidation for their own private purposes, and that the title and ownership of all their several properties theretofore used in the express business in this state were vested in the appellee, in consideration of issuance of its stock, and that the value of these properties so transferred was in excess of the amount of the claim established against Wells Fargo & Co. in this suit.

Under these conditions we are of the opinion that the law is that the appellee is liable for the debts and liabilities of the corporations so consolidating, contracted prior to such consolidation and transfer, whether created by contract or arising out of tort. Texas Seed & Floral Co. v. Chicago Set &

Seed Co. (Tex. Civ. App.) 187 S. W. 747; American Ry. Ex. Co. v. Commonwealth, 190 Ky. 636, 228 S. W. 433,

Appellee asserts that there are in fact none of the elements of a consolidation in this case, because none of the constituent companies ceased to exist. There is no evidence in this record that any one of the constituent corporations is now continuing its corporate existence. The facts in evidence would sustain this proposition up to the time of the application to consolidate at the end of the period of federal control, but not since the approval by the Interstate Commerce Commission. The record is silent upon the subject, except one witness testified that Wells Fargo & Co. was not now engaged in the express transportation business so far as he knew.

The facts show that Wells Fargo & Co. has for all practical purposes ceased to exist in Texas and elsewhere, by reason of the fact that it has transferred all of its assets to another corporation without paying its debts. But appellee says that an office building was retained, situated in Portland, Or. This is shown in the contract with the Director General of Railroads, but the Interstate Commerce Commission, at the end of federal control, authorized a transfer of all properties, and the record is silent as to the property actually transferred in the last instance, except as shown by the testimony of the witnesses quoted. That all property used in the transportation business was consolidated.

[5] But, under the facts above enumerated, the judgment is clearly wrong upon another theory or rule of law; that is, they show that there was an agreement to pay the debts of the old corporations, either express or reasonably implied. The facts are the appellee did pay many thousands of dollars of debts of Wells Fargo & Co. by it incurred prior to the consolidation. The circular introduced in the hearing before the Interstate Commerce Commission is practically a pledge to that effect, for the reason that, if the property of these corporations were taken over and the profits to each from its or their going concern, there would be no way of collecting debts contracted prior to consolidation, unless from dividends; and debts such as appellant's in justice should be settled before any dividends could be earned, and these things must have been in contemplation of the parties, as shown by the fact that claims were settled by appellee as late as 1920.

Believing that the discussion of the principles involved in the Texas Seed & Floral Co. v. Chicago Set & Seed Co., and the Kentucky case of American Railway Express Co. v. Commonwealth, supra, are sound and applicable here, we content ourselves by citing them with approval, as well as the cases there cited, without further comment.

Since there is no appeal from the judgment against Wells Fargo & Co., it is not disturbed. The judgment in favor of the American Railway Express Company is reversed, and here rendered for appellants.

## On Motion for Rehearing.

It is urged that the cause should be reversed and remanded instead of rendered, as ordered in the opinion, because, appellee says, the court having rendered judgment in its favor it was thereby denied a trial by jury. The answer is that the jury could not have made a more favorable finding for it than did the court; and there was no objection or exception to this finding, and no request that the cause be submitted to the jury, no appeal and no cross-assignment of error.

[6] We fail to see how, if granted a new trial, the appellee could controvert the fact that the several express companies were consolidated, and that it took over all the properties of Wells Fargo & Co., in Texas. This court is of the opinion that these facts alone render it liable for the debts of Wells Fargo & Co., so there could be no cause to reverse for retrial upon this ground.

[7] There may be some doubt as to whether the case should be reversed to give defendant an opportunity to introduce evidence upon the second theory upon which the opinion is predicated, viz.: An express or implied agreement to pay the debts of Wells Fargo & Co., incurred by the latter prior to the consolidation, but the majority are of the opinion that, if appellee had any other evidence, it should have introduced it upon the trial and not speculate upon the result under the evidence adduced, with a view to obtaining a new trial if not satisfactory. Bridgewater v. Hooks (Tex. Civ. App.) 159 S. W. 1004.

The motion is therefore overruled.

HIGGINS, J. (concurring). With reference to the finality of the judgment I concur in the view expressed by the Chief Justice in the original opinion. It may be conceded that the conclusion reached is not in harmony with general rules heretofore announced by our courts for testing finality. But these rules were announced in proceedings in personam or in rem, such as attachment or sequestration, where it was not only practicable but proper and necessary that the final sentence and decree of the court be incorporated in one judgment. In the present case jurisdiction of Wells Fargo & Co., if any, is not in personam, but in rem, by virtue of the ancillary proceeding in garnishment. Under the practice, the garnishment is a separate suit, and it is not contemplated nor is it always practicable to dispose of the garnishment or render judgment therein contemporaneously with the disposition and rendition of judgment in the main case. If the garnishment be contested, the judgment therein is necessarily rendered subsequent to the judgment in the main case.

In a proceeding against a nonresident without personal service, but in which a writ of garnishment has been issued and served, the court in the main case can go no farther than to establish the demand against the defendant, leaving the enforcement thereof to be provided for in the separate judgment which may then or subsequently be rendered in the garnishment suit. This in effect is the judgment which was rendered against Wells Fargo & Co. It being the only proper judgment which the court could render upon the final hearing in the main case, it should be regarded as a final judgment within the meaning of article 2078, Revised Statutes, granting the right of appeal from final judgments only.

Any other view of the matter would effectually deny to all parties in the main suit the right of appeal in cases arising in the manner now presented. If the contention of the American Railway Express Company be correct, then it would follow that, had the court below rendered judgment against that company for the amount of the verdict, and rendered judgment against Wells Fargo & Co. the same as was rendered, then the American Railway Express Company could not appeal because a final judgment as to Wells Fargo & Co. had not been rendered. In my opinion such an application of the general rules testing the finality of judgments in personam or in rem, as in attachment or sequestration, would be wholly inadmissible.

With respect to the issue of the liability of the American Railway Express Company for the debts of Wells Fargo & Co., whether arising in tort or upon contract, the writer is of the opinion that the ruling of the Kentucky Court of Appeals in American Railway Express Co. v. Commonwealth, 190 Ky. 636, 228 S. W. 433, is correct. The undisputed facts in the present case bring it within the ruling there made, for which reason I concur in the reversal and rendition of judgment against the American Railway Express Company.

The writer does not concur in the other reason assigned in the original opinion for the reversal and rendition. In my opinion the evidence presents no assumption by the American Railway Express Company of the debts of Wells Fargo & Co., except such as is imposed by law under the rule announced in the Kentucky case.

As to such other reason, the evidence viewed in its aspect most favorable to appellant presents no more than an issue of fact. Under the judgment it is presumed that such issue was found by the court in favor of the American Railway Express Company. This view of that theory would not even require remanding for retrial, because appellant made

no request for the submission of this issue to the jury. Article 1985, R. S.

I cannot concur in the contention made in the motion for rehearing that, by the reversal and rendition herein, the American Railway Express Company has been deprived of its day in court, its right to have all issues of fact upon which its liability is predicated passed upon by the jury, and its constitutional rights thereby violated.

The American Railway Express Company was brought into court upon a petition asserting a personal liability against it. It answered and appeared by its counsel. A jury was impaneled and sworn, and nine issues of fact were submitted by the court to the jury. Our statutes carefully protect the right of a litigant to have every disputed issue of fact submitted to the jury. The American Railway Express Company did not request the submission of a single issue. If it desired the submission of any issue arising in the case, it should then and there have requested it. The issues which the jury found, established a liability in the sum of $50,000 upon the part of Wells Fargo & Co. to the plaintiff. The facts upon which rests the liability of the American Railway Express Company for the payment of this demand are undisputed. There is no suggestion and nothing to indicate that they have not been fully developed.

The power and duty of this court to reverse and render the proper judgment upon this state of facts need no citation of authority.

For the reasons indicated, I concur in the disposition made of this appeal; and in overruling the motion for rehearing.